UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:22-CR-00149 |
| ) | |
| ) | JUDGE CAMPBELL |
| DARRELL DEWAYNE BURNS ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through Henry C. Leventis, United States Attorney, and Rachel M. Stephens, Assistant United States Attorney, and submits this response to the Defendant's Motion to Suppress ("Motion"). (Doc. 25.) The United States submits that the traffic stop in this case was legal and supported by probable cause, therefore the Defendant's Motion should be denied in its entirety.

**FACTS[1]**

On May 11, 2021, at approximately 3:15 p.m., Officer DePinto with the Nashville Airport Department of Public Safety was on patrol in a marked police vehicle around the Nashville International Airport. He observed a red Chevrolet Impala travelling in excess of the posted 45 MPH speed limit. Additionally, he observed the Impala had a tinted windshield and tint beyond the level of allowable tint driving on Donelson Pike. Officer DePinto caught up to the vehicle at the intersection of Donelson Pike and Murfreesboro Road where the vehicle was stopped at a red light. While both vehicles were at the red light, Officer DePinto observed the two occupants, seated in the driver's and the passenger's seats, begin to move around in what he believed to be an overly active manner for occupants in a vehicle. He turned his dash camera on. After the vehicle

---

[1] The United States expects to show the following facts if the Court deems an evidentiary hearing on Defendant's Motions necessary. However, should any facts recited below be different from what is offered at the hearing, the United States relies on the proof offered at the hearing.

turned, it was in the righthand lane of Murfreesboro Pike. Officer DePinto moved in behind the vehicle and the Impala.[2] He called the vehicle tag into dispatch. About 18 seconds after Officer DePinto moved behind the vehicle, the Impala switched to the left lane of travel.[3] Officer DePinto immediately followed into the left lane. Twelve seconds later, Officer DePinto turned on his lights to initiate a traffic stop.[4] The Impala pulled over to the right shoulder just past the Sonic restaurant.[5] As the Impala was pulling over, Officer DePinto received information back from dispatch.[6] He learned that the vehicle was a rental vehicle. Officer DePinto signaled to the driver to approach the patrol vehicle, and the driver complied. As the driver handed his license to Officer DePinto, Officer DePinto informed the driver that he was pulled over for going "50 in a 45."[7] The driver was identified as the Defendant, Darrell Dwayne Burns. Officer DePinto patted the Defendant down with the defendant's consent, at which time the Defendant informed DePinto he had marijuana in his pocket.[8]

Officer DePinto had the Defendant walk toward the patrol vehicle and asked whose car the Defendant was in. The Defendant informed him it was a rental car. Officer DePinto asked if there were other drugs or large amounts of money in the vehicle.[9] DePinto observed the Defendant lick his lips after he asked about other items in the vehicle, indicating to DePinto the Defendant may have been nervous about the line of questions. DePinto requested dispatch run the Defendant's driver's license number.[10] He informed the defendant that, based on the marijuana, he would

---

[2] Dash camera video (Doc. 25-2) 1:25-1:28.
[3] Dash camera video 1:47-1:54
[4] Dash camera video 2:01.
[5] Dash camera video 2:12-2:30.
[6] Dash camera video 2:19.
[7] Dash camera video 3:15.
[8] Dash camera video 3:38-3:51.
[9] Dash camera video 4:44-4:57.
[10] Dash camera video 5:48.

search the vehicle, and asked if the defendant had ever been arrested.[11] The defendant stated he had been incarcerated "for a long time" for drugs, that he spent 12 years in, and that he was on parole.[12] The defendant then began to call to his girlfriend asking if she had her ID.[13] Despite DePinto telling the defendant they would take care of that when another unit arrived, the defendant continued to call to his girlfriend. She got out of the car, the defendant began to walk toward her, and Officer DePinto began telling the defendant to stay where he was.[14] The defendant's girlfriend told him to "back up."[15] The defendant ran.[16] He was not located for over one year.

As the back up unit pursued the defendant to no avail, Officer DePinto asked the defendant's girlfriend, Katara Woods, why the defendant ran. She told DePinto there was a gun in the car. DePinto searched the Impala and retrieved it from the passenger's side floorboard near the center console.

## LEGAL ARGUMENT

### I. Officer DePinto is a State-Commissioned Law Enforcement Officer with Authority to Conduct Traffic Stops in Tennessee.

The defendant contends that Officer DePinto conducted the traffic stop in this case without any legal authority to do so. This claim is without merit. Accordingly, the Court should deny the Motion on this claim.

Tennessee Code governs the establishment and authority of airport police departments throughout the state. Under Tennessee Code, "a municipality that has established . . . an airport or air navigation facility, is authorized to adopt, amend and repeal such reasonable ordinances, resolutions, rules and regulations and orders as it shall deem necessary for the management,

---

[11] Dash camera video 7:33.
[12] Dash camera video 7:45-8:11.
[13] Dash camera video 8:20.
[14] Dash camera video 8:55.
[15] Dash camera video 9:04.
[16] Dash camera video 9:08.

government and use of the airport or air navigation facility . . . [and] [f]or the enforcement thereof, the municipality may, by ordinance or resolution, as may by law be appropriate, appoint airport guards or police, with full police powers and fix penalties, within the limits prescribed by law. . ." TCA § 42-5-113. It is under this authority that Nashville, the municipality that controls Nashville International Airport, created the Nashville Airport Police. (Ex. 1 Harding Aff. at ¶ 4.) Under state law and the authority of Metropolitan Nashville City Council, through Resolution 70-872, the government created Metropolitan Nashville Airport Authority ("MNAA") Police. T.C.A. § 42-5-113; Resolution 70-872. In turn, the Mayor of Nashville gives the President of the Metropolitan Nashville Airport Authority the authority to issue police commissions to its officers. (*Id*.) Nashville Airport Police Department officers enforce Tennessee law, Davidson County laws and ordinances, and particular ordinances applicable to the Nashville International Airport. Nashville Airport Police Department officers also use the same jails as the Metro Nashville Police Department officers. (*Id*. at ¶ 5.)

Officers with the Nashville Airport Police Department are not limited to law enforcement solely within the property boundaries of the Nashville International Airport. (*Id*. ¶ 6.) The MNAA owns numerous parcels of land throughout Metropolitan Nashville Davidson County on which public roads, state routes, and private roads exist. (*Id*.) These properties include Donelson Pike (State Route 255), Murfreesboro Road (State Route 41), Old Murfreesboro Road, Towne Park Drive, Briley Parkway (State Route 155), and numerous other locations throughout Nashville/Davidson County. (*Id*.) Officers with the Nashville Airport Police Department are issued Metro Nashville Police Department ("MNPD") employee numbers and routinely issue the same type of traffic and parking citations as MNPD officers on the roadways listed above. (*Id*.) Officers with the Nashville Airport Police Department have executed search warrants at residences

in Nashville/Davidson County. (*Id.*) They routinely patrol the areas listed above and respond to calls of service to additional locations such as McGavock Pike, Citation Drive, Harding Road, and Cockrill Bend in west Nashville, on and around the grounds of the John Tune Airport. (*Id.*)

Here, the assertion of the defendant that Officer DePinto did not have jurisdiction to make a traffic stop is baseless. Officer DePinto trained at the state law enforcement academy, he is qualified to serve as a law enforcement officer in the State of Tennessee, and he is commissioned by the Nashville Airport Authority. (Ex. 2: Tennessee Law Enforcement Training Academy Certificate, State Law Enforcement Officer Certificate, Metropolitan Nashville Airport Authority Commission.) Further, Officer DePinto's supervisors have reviewed the dash camera footage and the incident report of the stop in this case and concluded that "Officer DePinto was acting within his authority as a state law enforcement officer when he executed the traffic stop, and he possessed the jurisdiction to make the traffic stop where he did." (Ex. 1, ¶ 7.) Accordingly the defendant's Motion should be denied on this ground.

## II. The Traffic Stop Was Supported by Probable Cause.

"The requirements of probable cause are satisfied where the facts and circumstances within" officers' "knowledge and of which they had reasonably trustworthy information" are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Davis,* 430 F.3d 345, 352 (6th Cir. 2005). "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

It is well established that a police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); see also *United States v. Street*,

614 F.3d 228, 232 (6th Cir. 2010) ("[T]here is nothing unreasonable about stopping a vehicle whose driver has just committed a traffic violation.") (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). Moreover, even if the traffic violation observed is not an arrestable offense, law enforcement still retains the authority to stop the vehicle. *Street*, 614 F.3d at 232 (upholding the legality of a traffic stop made for a seatbelt violation); *United States v. Anderson*, 458 Fed. Appx. 440, 442 (6th Cir. 2012) (holding that a license-plate violation provided probable cause to make a traffic stop).

In Tennessee, state law authorizes municipalities of the state "to set speed limits on the public roads and streets within their jurisdictions that are not a part of the interstate and national defense highway system nor any access controlled highway on the state road and highway system." T.C.A. § 55-8-152(f)(1)(C). A violation of (f) is a class C misdemeanor. T.C.A. § 55-8-152(f)(2).

Tennessee state law also governs the appropriate level of window tinting that may be applied to a vehicle, how this law may be enforced, and the penalties for violating this statute. Tennessee Code Annotated dictates that "[i]t is unlawful for any person to operate, upon a public highway, street or road, any motor vehicle in which any window that has . . . a visible light transmittance of less than thirty-five percent (35%). Tenn. Code Ann. § 55-9-107 (a)(1)(A). The law then dictates that "[i]t is probable cause for a full-time, salaried police officer of this state to detain a motor vehicle being operated on the public roads, streets or highways of this state when the officer has a reasonable belief that the motor vehicle is in violation of subdivision (a)(1), for the purpose of conducting a field comparison test." Tenn. Code Ann. § 55-9-107 (b)(2)(c). The statute also outlines that having window tint that exceeds the maximum allowable under the statute "is a Class C misdemeanor for the operator of a motor vehicle . . . [who] violate[s] any provisions of this section." Tenn. Code Ann. § 55-9-107 (b)(2)(d).

The posted speed limit on Donelson Pike is 45 miles per hour. Here, the Defendant committed the traffic violation of speeding by driving 50 miles per hour in a 45 mile an hour zone, which provided Officer DePinto with probable cause to conduct a traffic stop. Further, Officer DePinto observed the Defendant operating a vehicle with excessive window tint, in violation of Tennessee law. See Tenn. Code Ann. § 55-9-107 (a)(1)(A). He was authorized to conduct a traffic stop to investigate that potential violation. Officer DePinto explained the violations to the Defendant as he gathered his license and began to run records checks on the rented vehicle. Officer DePinto also outlined the reasons for the traffic stop in his report on the day of the incident.

The Defendant claims the window tint was not illegal, citing the provision of the Tennessee Code which exempts vehicles registered in another state so long as it meets the requirements if the law in the state of registration. (Doc. 25, Page ID #: 47.) He provides no factual information as to the level of window tint on the vehicle. Even if Defendant's unsupported assertion that the tint was not illegal in Florida is correct, Officer DePinto had reason to believe it was illegal, therefore was justified in stopping the vehicle to investigate.

The traffic violations of speeding and a window tint violation, each alone and certainly when taken together, provided probable cause to conduct a traffic stop of the Defendant. Consequently, the Defendant's vehicle was lawfully stopped, which placed Officer DePinto in a position to investigate the crime for which the Defendant now stands accused. Accordingly, the Defendant's Motion with respect to the traffic stop of the Defendant's vehicle should be denied.

CONCLUSION

Based on the foregoing, the United States respectfully submits that the Defendant's Motion to Suppress should be denied.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By:   <u>/s/ Rachel M. Stephens</u>
Rachel M. Stephens
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, Tennessee 37203
(615) 401-6655
Rachel.Stephens2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the U.S. District Court Clerk via CM/ECF, which will send Notice of Electronic Filing to Dumaka Shabazz, attorney for the defendant, on the 11th day of January, 2023.

<u>/s/Rachel M. Stephens</u>
Rachel M. Stephens